**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AISHA M., | ) | |
| | ) | No. 25 C 7338 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Magistrate Judge M. David Weisman |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Aisha M. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision and terminates this case.

### Background

On April 5 and 12, 2022, plaintiff applied for benefits, alleging a disability onset date of September 4, 2020. (R. 68.) Her applications were denied initially, on reconsideration, and after a hearing. (R. 68-88.) Plaintiff appealed to the Appeals Council, which denied review (R.1-4), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 4, 2020, the alleged disability onset date. (R. 71.) At step two, the ALJ found that plaintiff has the severe impairments of depression, headaches, conversion disorder with pseudo-seizures, mild degenerative disc disease of the cervical spine, mild degenerative disc disease of the lumbar spine, obesity, lymphadenopathy, and pulmonary nodule with dyspnea upon exertion. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (*Id.*) At step four, the ALJ found that plaintiff cannot perform any past relevant work but has the RFC to perform sedentary work with certain

exceptions. (R. 74-86.) At step five, the ALJ found that the jobs plaintiff can perform exist in significant numbers in the national economy and thus she is not disabled. (R. 87.)

Plaintiff contends that the RFC was not supported by substantial evidence because the ALJ did not "identify specific evidence supporting each RFC restriction." (ECF 18 at 6.) The ALJ said this about the RFC:

> Following a careful review of the entire record, the undersigned is persuaded that the claimant's impairments limit her to a reduced range of sedentary work. The claimant has reported that her most significant problem is left sided pain and numbness which impacts her ability to stand and walk. While the claimant has sought treatment for pain and numbness in the low back and left leg, the record, as set forth above, has shown that the claimant retains an intact gait, motor strength, and neurological functioning. Additionally, x-rays have shown mild degenerative changes in the cervical and lumbar spine and neurological testing including EMG has been within normal limits (Exhibits 2F, p. 65, 22F, p. 32, 18F, p. 10, 22F, p. 32, 24F, p. 27). The residual functional capacity limits standing and walking to two hours in an 8-hour workday, as being on the feet for longer periods can aggravate pain/discomfort in the low back and lower extremities, knees, ankles, and feet, as well as shortness of breath, especially as the claimant is obese, which places additional stress on the body. It is noted that if a cane were required at all times when walking, the vocational expert opined that the jobs cited within the residual functional capacity could still be performed in the same numbers.
>
> The residual functional capacity precludes climbing ladders, ropes, or scaffolds with consideration for the claimant's complaints of low back and left leg pain, as well as neck and left upper extremity pain, the claimant's history of headaches and conversion disorder with pseudo seizures, and dyspnea on exertion. She has also been precluded from crawling, as such activity can aggravate neck, upper extremity, wrist, and hand pain.
>
> While the claimant testified that she is able to use the stairs to get to her apartment, she testified that she often uses albuterol when she gets to the car with this activity. Thus, she has been limited to no more than occasional climbing of ramps or stairs. The residual functional capacity also limits her to occasional balancing, stooping, crouching, and kneeling, as greater activity can aggravate pain in the neck, low back, lower extremities, as well as shortness of breath, again noting the claimant's obesity causes additional stress on the body.
>
> The claimant testified that she has dropped things and was assessed with carpal tunnel syndrome but that no surgery has been recommended. Although this is not seen throughout the record, the claimant has, at times, shown some reduction in grip strength, as well as decreased range of motion of the shoulder and/or upper extremities (Exhibits 6F, pp. 49, 15, 19F, pp. 51-53). This has been considered in

3

> limiting her to frequent, rather than constant, reaching, handling, and fingering. It is noted that the claimant had full grip strength and normal use of the hands at the consultative evaluation (Exhibit 11F) and is able to use the upper extremities/hands in order to prepare food, do the dishes, drive, use a cell phone, do cross word puzzles, and perform personal care (Exhibits 3E, 13F, and testimony).

(R. 83.) As this passage illustrates, the ALJ tethered the RFC limitations to specific evidence, including plaintiff's own reports of her limitations, as required by SSR 96-8p. *See id.,* 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)").

Plaintiff also takes issue with individual RFC findings the ALJ made. She argues that the ALJ's conclusion that plaintiff's obesity is accounted for by a limitation to sedentary work is not supported by the record. She says the combined impact of her obesity and back impairments makes her unable to sit for long periods of time. But her own statements are the only evidence she offers to support this argument (*see* ECF 18 at 7 n.6 (citing R. 378, 2111)), and the ALJ found that they were not consistent with the other record evidence (R. 77-80), a conclusion that is not "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)).

Next, plaintiff says there is a discrepancy in the ALJ's opinion that requires remand. Specifically, the part of the opinion in which the ALJ sets forth the RFC states that plaintiff can frequently reach. (R. 74-75.) Later in the opinion, the ALJ reiterates that reaching is limited to frequent, but he later says that the he has "limited reaching . . . to the occasional, rather than constant, level." (R. 83-84.) Plaintiff argues that if the RFC is meant to be for occasional reaching, she would be unable to perform the jobs the VE said were available to her.

4

Looking at the record as a whole, the ALJ's single reference to occasional reaching seems to be a scrivener's error. In the part of the opinion that sets forth the RFC, the ALJ said plaintiff could frequently reach and he repeated that statement when discussing her medical history. (R. 75, 83.) Further, the hypothetical questions the ALJ posed to the VE posited an individual who could frequently reach. (R. 118, 120.) But when the ALJ discussed the agency physicians' reports, he wrote: "[W]ith consideration to the claimant's complaints of left-hand numbness with occasional decrease in range of motion and grip strength, . . . the residual functional capacity has limited reaching, handling, and fingering to the *occasional*, rather than constant, level." (R. 84 (emphasis added).) Given that the ALJ incorporated frequent reaching both in the hypothetical questions he asked the VE as well as in the RFC, his single reference to occasional reaching can only fairly be seen as a mistake.

Plaintiff also argues that the ALJ should not have assessed evidence of obesity, conversion disorder, dyspnea, and headaches, which was generated after the state agency doctors rendered their opinions. But the ALJ used that evidence to craft an RFC that was more generous to plaintiff than the one crafted by the state agency doctors. (*Compare* R. 138-39, 150-51, *with* R. 75.) Thus, even if the ALJ's consideration of that evidence was error, it was harmless. *See Courtney v. Berryhill*, 385 F. Supp. 3d 761, 766 (W.D. Wis. 2018) (Harmless error analysis "asks the court to consider a prospective question—whether it can say with great confidence what the ALJ would do on remand. If the court is convinced that on remand the ALJ would come to the same decision, then the error is harmless") (citations and quotations omitted).

Next, plaintiff argues that the ALJ's assessment of Dr. Tai's opinion was flawed. Dr. Tai is a primary care physician who opined on September 14, 2023 that plaintiff's pain was so severe it would "constantly" interfere with the attention and concentration needed to perform even simple

5

work tasks, she cannot walk at all without experiencing severe pain, she can only sit for two hours of an eight-hour workday, can only sit thirty minutes at a time before needing to get up, she can rarely lift less than ten pounds and never lift anything heavier, she constantly needs unscheduled breaks, she can never reach, grasp, turn or twist objects or do fine manipulations, and her impairments would cause her to miss more than four workdays per month. (R. 1988-90.) The ALJ said this about Dr. Tai's opinions:

> Dr. Tai is a treating primary care physician. However, the doctor did not refer to his treatment records or objective findings to support the level of limitation suggested in this form. Indeed, the assessment for lumbar radiculopathy is not supported and is inconsistent with EMG testing at Exhibit 24F, p. 27, showing no radiculopathy or abnormal findings. Additionally, sarcoidosis is not clearly diagnosed (Exhibit 17F, p. 5) and the claimant's treating neurologist has assessed a conversion disorder with pseudo seizures (as opposed to seizure disorder) and the claimant has admitted that she has not had seizures since at least 2017 (Exhibit 24F, p. 22, and testimony). While the undersigned has assessed a sedentary residual functional capacity with standing and/or walking two hours in an 8-hour workday, the record does not support a further reduction in this regard, again noting normal EMG testing and strength testing one month prior to this form seen in the record (Exhibit 24F, pp. 27, 21). The assessment that the claimant can use the hands fingers, and arms 0% of an 8-hour workday is not persuasive and is internally inconsistent with Dr. Tai's records on this date, noting that the claimant reported being more active with no musculoskeletal or neurological abnormalities demonstrated on exam (Exhibit 22F, p. 100). This is also inconsistent with neurological exams showing full range of motion and intact motor strength of the extremities (Exhibits 24F, pp. 20-22) as well as with the claimant's reports of daily activities involving the use of the upper extremities/hands in order to prepare food, do the dishes, drive, use a cell phone, do cross word puzzles, and perform personal care (Exhibits 3E, 13F, and testimony). The objective medical record does not show a medical necessity to take unscheduled breaks and it appears as if Dr. Tai relied upon the claimant's subjective reports while preparing this form (Exhibit 22F, p. 101).

(R. 86.)

Plaintiff contends that the ALJ erred when he said Dr. Tai did not refer to his treatment records in the questionnaire he completed, but the questionnaire does not in fact refer to Dr. Tai's records. The ALJ also said that Dr. Tai's opinions were not supported by his records or consistent

with other evidence in the record, both of which plaintiff contests. The ALJ said, for example, that

Dr. Tai relied on plaintiff's lumbar radiculopathy, sarcoidosis, and seizure disorder to support his

opinions but testing showed that plaintiff did not have radiculopathy, there was no diagnosis of

sarcoidosis, and she did not have a true seizure disorder. (R. 86 (citing R. 1998, 2940, 2945).)

Moreover, Dr. Tai's treatment record from the day he filled out the questionnaire does not note

any physical abnormalities or limitations, which does not support his opinions and caused the ALJ

to conclude that the opinions he expressed were primarily based on plaintiff's subjective

complaints. Thus, the ALJ's conclusion that Dr. Tai's opinions were not supported by his records

or consistent with other evidence in the record is well supported. Plaintiff urges the Court to

consider how other evidence supports Dr. Tai's opinions. But the Court's task is to determine

whether the ALJ's assessment of Dr. Tai's opinion is supported by substantial evidence. It is, so

our inquiry is complete.

Next, plaintiff argues that the ALJ's subjective symptom analysis is flawed. The Court

"will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is

'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598,

603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). In assessing

plaintiff's symptoms, the ALJ said:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the record overall shows that the claimant has retained an intact gait, motor strength, and neurological functioning throughout the period at issue. Additionally, x-rays have shown mild degenerative changes in the cervical and lumbar spine and neurological testing including EMG has been within normal limits (Exhibits 2F, p. 65, 22F, p. 32, 18F, p. 10, 22F, p. 32, 24F, p. 27). The claimant has admitted that she has not had seizures since at least 2017 and her treating neurologist has assessed a conversion disorder with pseudo seizures (Exhibit 24F p. 22). As noted above, while the record supports dyspnea on exertion, a diagnosis of sarcoidosis is not clearly assessed (Exhibit 17F, p. 5) and the claimant has acknowledged that albuterol helps as needed.

(R. 77.) The ALJ then addressed in detail the evidence underlying his symptom evaluation. (R. 77-84.)

Plaintiff argues essentially that the ALJ should have given more or less weight to certain evidence than he did. As the Seventh Circuit has said: "We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900 (citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Further, the Court will "'reverse only if the record compels a contrary result.'" *Id.* (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (internal quotation marks and citation omitted)). The record here does not compel a different result.

Plaintiff's last argument is that the ALJ did not meet his burden of showing that a significant number of jobs exist that plaintiff can perform. Based on testimony from the vocational expert ("VE"), the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy, including document preparer (16,000 jobs), address clerk (12,000 jobs), and circuit board assembler (11,000 jobs). (R. 87, 118-19.) Plaintiff contends that these jobs are obsolete.

However, plaintiff, who was represented by counsel, did not object to the VE's testimony or question the VE during the administrative hearing. As a result, she has forfeited this argument. *Cain v. Bisignano*, 148 F.4th 490, 499–500 (7th Cir. 2025) ("When a claimant fails to object to a vocational expert's qualifications or testimony during the hearing, the claimant forfeits those arguments . . . ." (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)); *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) ("[A] claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections."); *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th

Cir. 2023) ("*Fetting* stands for the limited principle that a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record.").

**SO ORDERED.**                                    **ENTERED:  April 3, 2026**


M. David Weisman
_____
**M. David Weisman**
**United States Magistrate Judge**

9